The Holdings LLC is a multi-purpose holding company that is located in the San Francisco area of San Francisco, California.  The Holdings LLC is a multi-purpose holding company that is located in the San Francisco area of San Francisco, California.  The next case is number 06-5027, Fire-Trol Holdings v. United States. Ms. McCready. Good morning. May it please the Court, I'm Jennifer Dower McCready of Deacon Brock Harrison on behalf of Plaintiff Appellate Fire-Trol Holdings. Given the limited time in this matter, I would like to address three key areas where we believe most clearly represent to this Court the grounds on which this decision should be reversed and remanded to the Court of Federal Claims. The first issue is that the amendment to the specification which was used in the procurement at issue was void and unenforceable because it was not properly adopted. It is undisputed that the Forest Service was required to prepare a written justification and to obtain approval before using a qualification requirement. The purpose of that requirement as reflected in the W.G. Yates case is that the procedural safeguards, the purpose of the procedural safeguards is to ensure that qualification requirements are used only when and to the extent necessary rather than inappropriately to restrict competition. It is uncontested in this matter that justification and approval were not obtained for the January 27, 2005 amendment. Rather, the justification and approval predated that amendment and were with respect to the underlying specification 5100304B as adopted January 2000. But as a practical matter, how far in advance did your client know that there was an objection to this component? My client knew that the Forest Service has indicated that they disapproved of YP soda and that they intended to require gum thickener several years in advance. They had originally indicated that intent. However, they never adopted an amendment to the specification. Conversations were ongoing and, in fact, when the Forest Service first indicated a problem with the product, they misinterpreted a study and they overreacted, frankly, and banned my client's product before they realized they didn't have grounds to do that. They then went out for an additional round of studies, but those studies came back and showed that, in fact, there were a number of different environmental factors that may very well render any basis for the study and for the Forest Service's original decision to ban the substance meaningless when the retardant was used in the field. But the point is not the basis for the ban. The point is that if they were going to adopt this amendment to the specification, they were required to file a written justification and obtain specific approval for that amendment. They did not do so. The Forest Service and the interveners argued that there was an exception. They said that there was an exception for an amendment, that only the original specification needed to be adopted by the written justification and approval. Is that the 253C question? No. About whether it falls under 253C or is that a different issue? That's a different issue. This is under the Agriculture Acquisition Regulation Advisory No. 60. It states that the imposition of a qualification requirement acts to restrict competition and, as a result, is strictly managed. Furthermore, Advisory No. 60 states that the information justifying the qualification requirement is to be submitted in order to establish or change a qualification requirement. So in this case, regardless of the question of whether the Forest Service was justified, leaving that entirely out, they did not follow the proper procedure. And so in the procurement at issue, they had no authority to use that amended specification. The only specification available to them was the specification adopted in January 2000, which did not ban YP soda or require gun thickener. In addition, the Forest Service failed to comply with FAR Part 6 in using a purchase description which only allowed a single manufacturer of products produced by a single manufacturer. FAR Section 6.302-1C provides that an acquisition that uses a brand name description or other purchase description to specify a particular brand name, product, or features of a product peculiar to one manufacturer does not provide full and open competition, regardless of the number of sources solicited. It shall be justified and approved in accordance with FAR 6.303 and FAR 6.304. Again, FAR 6.303-1 requires the Forest Service to make and justify the decision limiting competition in writing, to certify that the justification is accurate, and to obtain approval. However, it is undisputed in the record there was no such certification and there was no such approval. So therefore, the Forest Service had no ability to use that specification. So regardless, again, of whether or not the quote-unquote amendment was justified, the effect of that amendment was to limit the solicitation to a single bidder. If they were going to do so, they were required to follow certain procedural steps, which they failed to do. And by failing to do so, they could not use that restrictive specification in the solicitation. The final and very clear ground on which the trial court's decision should be overturned is that the Court of Federal Claims erred in substituting its own judgment for the judgment of the contracting officer. The Forest Service rejected Firetroll's bid on the ground that the solicitation does not authorize the submission of alternate bids. That ground is not a valid basis for rejecting the bids, and that has not been contested in this matter. There is no other contemporaneously documented basis for rejecting Firetroll's bid. So the only basis in the record is that it was on alternate bids, and it's not contested that that is not a proper basis. So bottom line is, all you're suggesting is that we would need, therefore, a remand so that the contracting officer, in your view, in the first instance, would do a do-over, right? Exactly. Okay. And the case law, I guess the government relies on the Illinois case? Yes. I mean, they do have a standard and circumstances in which a remand is not necessary, correct? That is true. And that's when there's futility, because you know what the bottom line is going to be when you send it back, right? That is true. Why doesn't this case, what's happened, what the contracting officer said, you know, trial and other places, satisfy that? Because the futility exception applies where we know what the decision would be. In this case, whether or not Firetroll's bid was responsive, leaving out that issue of the alternate bids, is an issue of discretion for the contracting officer. What the Court of Federal Claims found was that the contracting officer, in testifying and attempting to backfill, gave confusing and conflicting testimony. And so the court, it was unclear to the court what the contracting officer would have done. What the court said was, when I, the court, look at this bid, I'm not clear on what the pricing is. And so, therefore, I find that if I send it back, that's what the contracting officer would find. Well, fair enough, but what it said in more detail was it found that a reasonable contracting officer, did it not, would find, would conclude that this was not a fixed price bid, right? It did, but it also… His finding that I think is arguably unassailable, I mean, you haven't challenged that aspect of it. Why isn't that sufficient to establish the futility of remanding it? Because what he didn't say is that a reasonable contracting officer could not find that this was a firm fixed price. So what, in effect, what the court did was say, I'm going to assume that the contracting officer would keep the same decision and reject this bid again. I'm sorry to interrupt, but if he found that a reasonable contracting officer would find that there was not a fixed price, a discernible fixed price, isn't that the same as saying that a reasonable contracting officer could not find that there is a firm fixed price? No, I don't believe it is, because I think there's an entire gray area here where the contracting officer has discretion. And the court can say a reasonable contracting officer could look at this bid and say, I can't figure out the price. But in fact, a reasonable contracting officer could have looked at this bid and said, the services are expressly stated in the bid, the cost of the services. The cost of the product can be determined with reference to the FOB origin contract of Asteris. Because at any given base, and there were separate contracts for each base, they have only certain equipment that can only use a certain type of retardant, solid or liquid, and in certain forms. And so the cost of the retardant bid must be the cost of the retardant that would be used at that base. They're not going to buy a retardant that wouldn't be used. So we have a fixed price for the service part. We have a fixed price for the retardant. We have a fixed price for the freight because there was a contract freight rate that was submitted in connection with the FOB origin contract. And the court could look at that and say, that rate, all we do is we calculate it from the plant to the base. We have the miles. We know the rate because there's a contract rate. Therefore, you add the three together, you've got a fixed price. That would be a perfectly reasonable, rational thing for a contracting officer to do in looking at this. And so we believe that this matter must be submitted, returned to the contracting officer to make that decision. But didn't the contract provide for it that the freight rate would be plugged in depending on which location and the rate at the time of the shipment? There were different contracts here. The FOB origin contract, yes, provides that because the bases are not fixed. But you could determine a fixed freight rate with respect to a fixed base from the plant origin, which is fixed, to the base. We know those miles. We know the rate per mile. We can calculate that and obtain a fixed freight rate. So it would have been perfectly rational for a contracting officer to make the decision that this bid was responsive. I do see I'm into my rebuttal time, so unless you have any further questions on direct, I'd like to reserve the rest of my time. All right. Let's hear from the other side. Thank you. Good morning. May I please have the floor? Mr. McOmail. Thank you, Your Honor. The court should affirm the trial court's judgment in case 20501 because Fire Troll's bid number two was not responsive. Everything else that counsel talks about was litigated and resolved in case 205, from which the judgment, the April 2005 judgment, was not appealed. Therefore, all those issues are of race judicata. Let's just assume for the sake of today's argument that they're before us. Yes. And even assuming that, there is one thing that still has been waived by Fire Troll, and that is whether a justification for the amendment itself had to have been provided. That is something that Judge Smith ruled was not necessary because the amendment did not change the character of the product, and that is not something that Fire Troll has challenged, so that is waived as well. But the appendix does reflect on page 30130 that there was some justification activity. That's the FedBizOpps notice that refers to the amendment. Part nine does not, I'm sorry, part six does not apply to a solicitation with a qualification requirement. Part nine does. And the section 253 argument that counsel makes is not applicable because 253C applies to qualification requirements, and this solicitation had a qualification requirement. It was not a qualification requirement that said one can only bid FOS check products. The specification said you can bid off the QPL or you can demonstrate that your product also meets the specification. That's the difference between what counsel says is a brand name procurement and this procurement. This procurement did not prevent Fire Troll from developing and testing and qualifying its products. It just did not do those things, and it didn't even prevent Fire Troll from bidding. Fire Troll did bid. Fire Troll bid products off the QPL. But when the specifications were not changed in accordance with the regulations, you're saying nonetheless they were obliged to foresee the inevitable and start several years ago to change their formulation rather than starting now. Well, they could have done two things, and they did both. They could have developed a product that met the QPL, or they could have litigated. There was nothing precluding them that the record shows anyhow that from developing a product that did not contain YP soda and did contain gum thickening. Despite the absence of the formality of stating that the specifications were going to change. Yes, if those justifications were not met, then yes, and we rely on the trial court's determination that a further justification of the amendment was not required in this case. The trial court's ruling on that issue is on page 21 of the appendix, and that is because the character of the product didn't change. The character of this product was fire retardant. It still retards fire. It simply has different ingredients in it than the previously qualifiable fire retardants. So when you say it doesn't change the character of the product, you're using character in its gross sense. Yes. Since it significantly, according to your argument, changes how the product works in the environment. It changes the— That's not the character of the product? No. In terms of this case, no, it's not, because the law— That's what this case is about. No, it's not. That's the ingredient. I disagree, Your Honor, because the character of the product is not something that Firechild has litigated further than what happened at the trial court, the trial court level. So the court should view the character of the product— Yes, and that is— You're saying that has nothing to do with the character of the product because—because what? Because the product's fire retardant? Yes, and as far as this case is concerned, because that issue has been weighed, that is what the court— But that's not the issue. They have been—complained on the fire retardant and been told it won't do because of the formulation. Yes, which is different than— But you say that it has nothing to do with the character of the product. That's right, Your Honor, and that's what the court should hold, that the law of this case, because that issue has been waived, is that the— You're saying it's been waived or that it has nothing to do with it? That it has nothing to do with it because it has been waived. The—and bid number two was not responsive, and the court need only look at page 16025 of the appendix as an example, and that example shows this is one of their bid pages in which they were requested and required to provide fixed firm prices for furnishing, storing, mixing, and loading the retardant. They did not do that. They simply put, as they explain in their brief, they don't explain it here expressly, that they were putting prices on for service for only the second to third, fourth of those requirements, not the first. It is not reasonable to expect that a contracting officer will go outside the solicitation to determine, one, what the mathematical formula is that reflects the second caveat on that page, and two, where all the data to plug into that mathematical formulation can be found. That was up to Fireshore to do. If it was presenting a mathematical formulation, that formula should have been on that page. Also, it should have been on that page where all the data. Better, and exactly what they were asked to do, was put in that column on the right-hand side under amount, their fixed firm prices. To this day, they have not told anybody what numbers they understood were in that right-hand column. Here's my problem with that aspect of the case. The contracting officer had at least two opportunities in which she put something in writing, the first time and then the second time, which was never set. She obviously testified at the hearing before the Court of Claims, and the only thing that the Court of Claims, that I can tell, concluded with respect to what the contracting officer either thought, did, whatever, was at best confusing. So then the Court of Claims agrees with your position, which is it's a reasonable person would say this is not specific enough, this isn't a fixed price. Why is that enough under Illinois v. Interstate Commerce, which is the case that you cite, which has a futility exception? Why is that enough to establish that it would be futile to remand it? Well, there are two aspects of that. One is because the Court held that a reasonable contracting officer would find this nonresponsive. So that's sufficient, and is there a case? Because I don't think those were the facts in the Illinois case. You're asking us to conclude that when the trial court says this is what a reasonable person would do, that that in and of itself is sufficient to establish the futility of ever going back? Yes, but there's more than that now, because we know what this contracting officer would do upon remand. Why do we, how do we, do we know, are you saying that we know that this contracting officer would find ambiguity or lack of clarity or lack of specificity in the fixed price? Yes. How do we know that? Because she testified to that. She testified that she could not tell what their prices were. But the trial court, you know, who we give deference to in terms of evaluating the witnesses or whatever, didn't rely on the reasonable person thing because of her testimony. What he said about her testimony, it was confusing, inconsistent, blah, blah, blah. So you're asking us to sort of not, ignore what he said about the testimony and just find parts of the testimony that support your position. Yes. Right? And there's a good reason for that, because right from the beginning, in that May 5th letter, the contracting officer said this is nonresponsive. She then went on to talk about alternate. For other reasons.  The May 12th letter does not deal with lack of a fixed price. It uses the word nonresponsive. But nonresponsive for the following reasons, which do not consist of a fixed price. I mean, show me where I'm missing it. I've read the letter over several times. No, there's nothing in that. But then she has to explain what she meant by that. And she explained that she could not figure out what the price was. That is her testimony before the trial court. But the trial court did not make a finding with respect to her testimony. It's credibility. It's whatever. The only finding he made with respect to her testimony was that it was inconsistent and a few other adjectives. But the question, Your Honor, is not so much what the trial court found, because this is administrative record reviews. The question is whether there's substantial evidence in the record to support the judgment. And there is, because the contracting officer said when she looked at that bid, she could not understand what their prices were. She could not figure it out from the face of the bid. So the administrative record reflects that what was in the contracting officer's mind was that when she rejected this bid, was that there was no fixed firm price on it, even though she— Is her testimony before the court of claims, are you considering that part of the administrative record, or are you saying her testimony dates back to the May 12th letter, which is part of the administrative record? For purposes of this case, the former, because that reflects what— which then becomes part of the administrative record. And so the administrative record reflects that what was in the contracting officer's mind at the time that she rejected the bid was that she couldn't figure out what those prices were to be. She couldn't figure out if the government was going to have to pay freight. And so that is why we know it would be futile, because we know what the contracting officer was thinking. Regardless of her unfortunate reference to the alternate bid, what she understood was that she could not—was that they were not giving fixed firm prices. And so it's futile not because the court of claims concluded that a reasonable contracting officer would conclude that you couldn't figure out the fixed price, but because she testified that she couldn't. For both those reasons, Your Honor. It is futile because we know why it was done, why the bid was rejected, and we know what would happen if the bid were returned. Because this page reflects that this solicitation does not give a firm fixed price, and therefore it is not responsible. Wait, which page are we talking about now? Page 16-025, which is an example from Bid 2. That shows that there is no fixed firm price for the entire thing there, for the entire requirement. And Farachov has never explained what numbers should be in those columns. So when there's an obligation to assure competition, and if one of the bids that comes in, one of the competitive bids, is sloppy, you're saying that ends it? That ends the obligation to ensure competition? You just throw it out? No, but this is more than sloppy, Your Honor. This uses language that, first, this caveat too, first, is confusing. It's confusing to anybody. I'm asking what the obligation is in administering the statutory, the regulatory obligation to assure and obtain competitive bids, particularly this bidder is the incumbent. So it isn't as if it's someone just passing by. To determine whether on the face of the solicitation... And if you find that there's a flaw in the bid, you say, all right, school's out, I'm going to give the contract to the other guy? Well, Your Honor, it is a sealed bid. So upon opening the bid, on the face of the bid, the contracting officer should be able to determine what the fixed firm price is for the entire requirement so that other bidders are not put at a disadvantage by their having put on firm fixed prices. The contracting officer, part of her testimony was that those prices looked good. What she meant was those prices that were in the right-hand column of those pages, they looked good because presumably they were lower than Astaris's bids, and the reason they were lower than Astaris's bids was because they were only for service, they weren't for product. But also, the caveat 2 uses terms that are undefined. It says FOB destination price of the product. That's what the government would have to reimburse. Well, Fire Troll explains now what that means, but that caveat itself does not explain what FOB destination base price of the product is. And the contracting officer isn't supposed to know what that means? No, no. The contracting officer is not supposed to have to interpret language of the caveat 2, a solicitation that requires firm fixed prices be listed in the right-hand column of those pages. The example of 16- I asked whether the contracting officer is supposed to know what FOB point of origin means. According to Fire Troll, yes, no, but the answer is no. The contracting officer is not supposed to know what FOB base price of the product is in determining whether a solicitation for full service is. No, the contracting officer is not supposed to be in a position to have to interpret that language because what if she got it wrong? What if she got it wrong and awarded this contract to Fire Troll, and then Astaris comes back with its own bid protest and says, well, what is that supposed to mean? And because it is undefined, it is not responsive. And as far as all the rest of the scientific disagreement, that's exactly what it is. That's all it is, scientific disagreement. There is disagreement about the science and the conclusion to draw from the science. There is more than substantial evidence in the record to support the Forest Service's decision to no longer buy products that had YP soda but without gum thickener. And because this court reviews judgments, not opinions, the court should limit its review only to those issues that were litigated in 2005-01, none of which include the pre-award protest. Thank you. Thank you, Mr. McEnroe. Ms. Dow McCready. Thank you, Your Honor. What we did not hear in the response was any response to Fire Troll's position that the Forest Service was required to adopt the amendment as stated in Advisory 60. Advisory 60 doesn't say, well, as long as you tell them enough ahead of time, it's okay if you don't follow the procedures for the written justification and approval. Advisory 60, the Department of Agriculture direction to those under its control, including the Forest Service, says you shall do a written justification and you shall get the proper approvals before you use a specification, including an amendment to that specification. They could have adopted that amendment and they did not do so. As a quick example, there were other issues that the Forest Service had said they were going to change in the specification that they never did. They were going to change the degree of fire retarding protection that was required. They never changed that. Until they have an amendment to the specification, they do not have a binding basis on which to limit competition to a single manufacturer. Manufacturer, not bidder. The standard is manufacturer. And they did not adopt that and they could not use it in this solicitation. They state that the character of the product didn't change. Well, of course the character of the product changed. It eliminated one of only two manufacturers. They put substantial restrictions in there which restricted competition. And the purpose of the review of qualification requirements is to make sure that we do not unduly restrict competition. They state that it is not reasonable to expect the contracting officer to go outside the bid. But the contracting officer here very well could have gone outside the bid. FOBO origin is a standard term that one would hope that she would know what that meant and be able to determine the price. What the Court of Federal Claims found in its decision was that Ms. Hightower's testimony regarding her reasons for finding FireTroll's bid nonresponsive, that that testimony was inconsistent and confusing. This is on page 8 of the appendix. That she had testified that she could not determine a price, but also that she had stated that FireTroll's prices looked good and but for the alternate bid, FireTroll would have been awarded the contract. When there's inconsistent testimony, when the contracting officer could reasonably reject the bid or could reasonably find that there's a firm fixed price, we must send that back to the contracting officer to exercise her discretion and determine whether or not the bid is responsive and the contract should be awarded. Unless this Court has further questions, I will submit. Any more questions? Okay. Thank you both. The case is taken under submission. Thank you.